| | | |
|---|---|---|
| AGNES MONERI<br>1026 Kings Tree Drive<br>Bowie, Maryland 20721 | * | IN THE UNITED STATES |
| | * | DISTRICT COURT |
| Plaintiff, | * | FOR THE |
| v. | * | DISTRICT OF MARYLAND |
| DAYDREAM SUNSHINE INITIATIVE<br>4000 Mitchellville Road, Suite 406A<br>Bowie, Maryland 20716 | * | |
| | * | |
| Serve on Resident Agent: | * | Case No.:___1:22-cv-753_____ |
|     Jeremy J. Lewis<br>    10794 Pathway Lane<br>    Monrovia, Maryland 21770 | * | |
| | * | |
| and | * | |
| ERICA COX<br>4000 Mitchellville Road, Suite 406A<br>Bowie, Maryland 20716 | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

COMES NOW, Agnes Moneri, by and through her attorneys, Jamaal W. Stafford, Esq., Elizabeth A. Marcus-Wenger, Esq., Kwabena Owusu-Koduah, Esq., and the Law Firm of J.W. Stafford, LLC, and hereby files this Complaint against Daydream Sunshine Initiative and Erica Cox, and in support thereof states:

## PARTIES AND JURISDICTION

1. Plaintiff, Ms. Agnes Moneri, is an adult resident of the State of Maryland. Ms. Moneri's consent to participate as a Plaintiff in a Fair Labor Standards Act action is attached hereto.

2. Defendant, Daydream Sunshine Initiative ("Daydream"), is an employer, as defined by the Fair Labor Standards Act (hereinafter "FLSA"), Md. Code Ann., Labor and Employment Article §3-501, et seq., Maryland Code Ann. Labor and Employment § 3-401, et seq., and Md. Code Ann., Health Occupations, §1-501, et seq.

3. Erica Cox was the Executive Director of Daydream during all relevant times. As such, upon information and belief, Ms. Cox directed payroll and compensation decisions. Therefore, she is liable under the Fair Labor Standards Act and Maryland Wage and Hour Law because of her role at Daydream and control over Ms. Moneri as an employee. Upon information and belief, Ms. Cox is located in Maryland.

4. At all times relevant to this action, Daydream operated continuously in the State of Maryland. During the relevant time period, Ms. Moneri worked for Daydream, providing nurse practitioner services for Daydream's clinic in Prince George's County, Maryland.

5. At all times relevant to this action, Daydream was an enterprise engaged in interstate commerce within the meaning of the FLSA. At all times relevant to this action, Daydream had an annual gross volume of sales made or business done of not less than $500,000.00.

6. At all times relevant to this action, Daydream was Plaintiff's "employer" within the meaning of the FLSA, Maryland Wages Payment Collection Law ("MWPCL"), Maryland Wage and Hour Law ("MWHL"), and Health Care Workers Whistleblowers Protection Act.
This court has jurisdiction over Defendant pursuant to §16(b) of the FLSA, 29 U.S.C. §216(b), and 28 U.S.C. §1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. §1331. This court

has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367. Venue is proper pursuant to 28 U.S.C. §1391.

## FACTS COMMON TO ALL COUNTS

7. Daydream is a non-profit organization located in Prince George's County, Maryland that provides medical services to HIV positive individuals and those with other sexually transmitted infections.

8. At all relevant times hereto, Erica Cox was the Executive Director of Daydream. Upon information and belief, Ms. Cox was involved in, and responsible for, compensation decisions at Daydream.

9. On August 6, 2021, Daydream sent Ms. Moneri an Offer Letter. In that Offer Letter, Ms. Holly Smith, Human Resources Manager, noted that the position Ms. Moneri was being offered would be from 9:00 a.m. - 5:00 p.m. and would be at Daydream's office in Bowie, Maryland. Her rate of pay would be $55.00 per hour. Further, Ms. Moneri would have the benefits of paid holidays, two weeks of paid time off for the first year after ninety (90) days of employment, and reimbursed healthcare costs. Finally, the Offer Letter notes that Ms. Moneri would be paid her wages twice a month.

10. On August 9, 2021, Daydream hired Ms. Moneri as a Nurse Practitioner.

11. On that same date, Ms. Moneri executed an Employment Contract with Daydream. Notably, that Employment Contract referred to Ms. Moneri and described her as an employee. The only portion that notes Ms. Moneri as a contractor is in one reference regarding that she will be paid as a "1099 contractor." In the entirety of the Employment Contract, Daydream refers to Ms. Moneri as "the Employee" and consistently discusses employing her. It further notes that she "shall devote her full professional time, attention, skill and effort to the services rendered

or conducted by the company and shall faithfully perform such duties as are assigned to her by the manager (Erica Cox, NP) of the company."

12. Daydream notes in its Employment Contract that it will reimburse Ms. Moneri for any license renewal and pay for Ms. Moneri's medical malpractice insurance.

13. Further, Daydream outlines Ms. Moneri's hours of work in the Employment Contract as 8:00 a.m. to 5:00 p.m.

14. Daydream includes in its Employment Contract with Ms. Moneri that it is the sole entity to set fees for the services Ms. Moneri performs and Daydream will conduct all business functions for the services that Ms. Moneri performs.

15. During her tenure at Daydream, Ms. Moneri was treated as an employee of Daydream.

16. In accordance with the Employment Contract, Ms. Moneri was assigned to Manager, Erica Cox, also a nurse practitioner. Per the executed Employment Contract, the term of her employment was defined as August 17, 2021 through August 1, 2022, which would be automatically renewed on a calendar year basis. Ms. Moneri was to be paid $55.00 per hour. Further, her work week was to be limited generally to 40 hours per week.

17. Upon information and belief, Executive Director Cox assigned Ms. Smith to serve as a point of contact for payroll issues while retaining final control over all ultimate payroll and other human resource decisions. Ms. Smith utilized the title of "Human Resources Manager" or "Executive Assistant" depending on the context of the communication. In her role, Ms. Smith provided information to Ms. Moneri regarding payroll and other human resources concerns.

18. As a Nurse Practitioner at Daydream, Ms. Moneri's duties included conducting patient history and physical examinations of Defendant's patients; performing follow-up

evaluations and dictating notes for those visits; discussing patients' visits with Defendant's physicians; and evaluating new patients.

19. Daydream had Ms. Moneri perform all of her duties in its office, located in Bowie, Maryland. It also provided the majority of the equipment and materials that Ms. Moneri needed to perform her duties.

20. Further, Ms. Moneri's Employment Contract provided that "the employee or the company may elect to terminate this agreement, at any time; provided that during the first six (6) months of the term, the party electing to terminate must deliver written notice of such election, to the other party, at least thirty (30) days prior to such termination." Employment Contract, Section 10.

21. Under the Employment Contract, Daydream agreed to pay Ms. Moneri twice a month.

22. Ms. Moneri received three payments during the tenure of her employment with Daydream. Upon information and belief, these pay checks were not for the correct amount based on the amount of time she worked. Additionally, some of these deposits were untimely. She received those payments on September 27, 2021, September 29, 2021, and October 1, 2021. These payments were each for a different amount, despite her consistently working 40 hours per week.

23. Ms. Moneri never received a paystub during her tenure at Daydream and was never informed of where to access her paystubs.

24. Holly Smith, Human Resources Manager, informed Ms. Moneri that she did not need to track her time worked because she was salaried, despite the fact that her Employment Contract specified a rate of pay at $55.00/hour.

5

25. On October 4, 2021, Ms. Moneri submitted a written ethics complaint to Jay Morelock, Chief Financial Officer; Ryan Smith, President; Holly Smith, Human Resources Manager; and Erica Cox, Executive Director.

26. Ms. Moneri's ethics complaint outlined her concerns regarding alteration of patient medical records, including when medications were prescribed and deletion of medical records, as well as Daydream's failure to compensate Ms. Moneri.

27. Specifically, Ms. Moneri noted that on September 9, 2021, a prescription for a patient was refilled that had originally been prescribed before Ms. Moneri's first date of employment with Defendants. However, that record was later altered to portray that Erica Cox stopped the prescription on that date and that Ms. Moneri then prescribed the same medication on the same date. Ms. Moneri specifically outlined her concerns as it related to this alteration, in that the alteration implicated her for beginning a prescription. Further, Ms. Moneri outlined the arrears of payment of her wages. As of October 4, 2021, Daydream owed Ms. Moneri approximately one-half of her pay.

28. That night, Ms. Holly Smith texted Ms. Moneri and instructed her not to come to work the following day, Tuesday, October 5, 2021, so that management officials could allegedly discuss her concerns.

29. On October 5, 2021, Ms. Holly Smith called Ms. Moneri for an unknown reason. Ms. Moneri requested that all communication regarding her ethics complaint be committed to writing rather than discussed verbally so nothing could be misconstrued. They then ended the telephone call. Ms. Moneri did not receive anything in writing on that date from Ms. Smith or Daydream.

30. Therefore, during October 5, 2021, no one from Daydream provided Ms. Moneri with an update regarding her complaint or with further direction.

31. Because Ms. Moneri was not informed of any results of the alleged discussions among management officials, Ms. Moneri reported to work on Wednesday, October 6, 2021. At that time, Ms. Moneri tried to log in to her account, but she received a message that her account had been deactivated.

32. Ms. Moneri then emailed her Manager, Ms. Erica Cox, noting that she was present at work. Ms. Cox, in turn, instructed Ms. Moneri to call Ms. Holly Smith, the Human Resources Manager.

33. Later that day, Ms. Holly Smith, terminated Ms. Moneri effective on October 4, 2021. In that written Termination Notice, Ms. Smith noted that Ms. Moneri would receive final payment for her employment.

34. Subsequently, on October 14, 2021, Ms. Holly Smith emailed Ms. Moneri requesting her current mailing address. On October 15, 2021, Ms. Moneri responded to the email with the requested information.

35. Ms. Moneri, however, has not received her final paycheck or any further communication from Daydream, Ms. Cox, or Ms. Smith.

36. Daydream had substantial control over the working conditions of Ms. Moneri and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

37. Daydream controlled Ms. Moneri's terms and conditions of employment by determining her compensation, supervisor, hours of work, and duties of her position.

38. On or about February 7, 2022, Ms. Moneri received a 1099-NEC from Daydream, asserting her non-employee compensation. This document is notable in that it is the first official

document Ms. Moneri has seen that asserts her as a contractor. Additionally, Ms. Moneri earned more than the amount of wages listed on the 1099-NEC, but she has yet to actually receive the remaining wages. Further, Ms. Moneri was never provided paystubs or information on how to obtain or view her paystubs.

## CAUSES OF ACTION

### COUNT ONE
### Violation of Fair Labor Standards Act
### 29 U.S.C. §201, et seq.
### Against Defendants Daydream and Erica Cox

39.  Plaintiff hereby restates and incorporates Paragraphs 1 through 38 hereof as though fully set forth herein.

40.  The FLSA, 29 U.S.C. § 206 provides that employees are to be compensated at least a minimum wage for any and all time worked.

41.  Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. §207(a)(1), and Defendants were her "employer" under the FLSA, 29 U.S.C. §207(a)(2).

42.  Defendants, Daydream and Ms. Cox, are both defined as the "employer" under 29 U.S.C. §203(d) as Daydream is the entity that employed Plaintiff and Ms. Cox is the Executive Director and, upon information and belief, made the compensation decisions for Daydream.

43.  Defendants, as Plaintiff's employer, were obligated to pay Plaintiff the minimum wage for the hours she worked. Defendants failed to do so.

44.  As set forth above, Plaintiff worked forty (40) hours per week while employed with Defendant and was not promptly paid by Defendants on regular payment dates, as required by law.

45.  29 U.S.C. §206(a) of the FLSA provides that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for

commerce, or is employed in an enterprise engaged in commerce or in the production of good for commerce, wages at [certain specified] rates[.]"

46. The FLSA further requires that wages be paid promptly on regular payment dates.

47. Defendants violated the FLSA by failing to pay minimum wages to Plaintiff.

48. Defendants further violated the FLSA by failing to pay wages promptly on regular payment dates.

49. Defendants' failure and refusal to pay Plaintiff as required by the FLSA was willful and intentional and was not in good faith.

WHEREFORE, Defendants are liable to Plaintiff under Count I for all unpaid wages in such amounts as are proven at trial, plus an additional amount as liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, costs, and any other and further relief this court deems appropriate.

**COUNT TWO**
**Violations of Fair Labor Standards Act – Retaliation**
**29 U.S.C. §§201, et seq.**
**Against Defendants Daydream and Ms. Cox**

50. Plaintiff hereby restates and incorporates Paragraphs 1 through 38 hereof as though fully set forth herein.

51. Section 215(a)(3) of the FLSA provides that it is unlawful "to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act…., or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." This provision is reiterated at Section 218(c).

52. Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. §207(a)(1), and Defendants were her "employer" under the FLSA, 29 U.S.C. §207(a)(2).

53. On October 4, 2021, Ms. Moneri submitted a written ethics complaint to Jay Morelock, Ryan Smith, Holly Smith, and Erica Cox that included a complaint regarding Daydream's failure to compensate Ms. Moneri, clearly alleging violations of the FLSA.

54. Ms. Moneri's written complaint constitutes a protected activity.

55. That night, Ms. Holly Smith texted Ms. Moneri and instructed her to stay home the following day, Tuesday, October 5, 2021, while management officials discussed her complaint.

56. During October 5, 2021, Ms. Moneri did not receive any communication from Daydream.

57. Because she did not hear from Daydream on October 5, 2021, Ms. Moneri reported to work, as usual, on Wednesday, October 6, 2021. At that time, Ms. Moneri tried to log in to her account in the office. She received a message that her account had been deactivated. At that time, she emailed Ms. Erica Cox, her manager, noting that she was present at work. Ms. Cox instructed her to call Ms. Holly Smith. Ms. Moneri insisted that any communications be in writing.

58. Promptly thereafter, on October 6, 2021, Ms. Holly Smith, Human Resources Manager, terminated Plaintiff on behalf of Daydream effective October 4, 2021.

59. Defendant's termination of Plaintiff constitutes an adverse job action.

60. Defendant's retaliation against Plaintiff was prohibited by the FLSA and was willful and intentional.

61. Plaintiff received no write-ups or adverse feedback. However, two days after she complained about Defendant's wage and payment practices, Defendant terminated Plaintiff's employment. This termination was a direct retaliatory action against Plaintiff due to her complaining about Defendant's illegal actions relating to payroll, creating a causal connection between Plaintiff's complaint and Defendant's abrupt termination of Plaintiff's employment.

WHEREFORE, Defendants are liable to Plaintiff under Count II for backpay in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this court deems appropriate.

### COUNT THREE
### Violation of Maryland Wage and Hour Law
### Maryland Code Ann. Labor and Employment § 3-413
### Against Defendants Daydream and Erica Cox

62. Plaintiff hereby restates and incorporates Paragraphs 1 through 38 hereof as though fully set forth herein.

63. Maryland Wage and Hour Law provides that employees are to be paid at least minimum wage for any and all time worked.

64. Plaintiff was an "employee" covered by the Maryland Code Ann. Labor and Employment § 3-413 and Defendants were her "employer" under the Maryland Code Ann. Labor and Employment § 3-401, et seq., as, upon information and belief, they employed 14 or less employees.

65. Defendants, as Plaintiff's employer, were obligated to pay Plaintiff timely and at least minimum wage, as set forth in §3-413(c), for her hours worked. Defendants failed to do so.

66. As set forth above, Plaintiff worked at least forty hours per week while employed with Defendant. Further, as set forth above, Plaintiff was not compensated timely for her hours worked. Namely, Plaintiff received those payments on September 27, 2021, September 29, 2021, and October 1, 2021. These payments were each for a different amount, despite her consistently working at least forty (40) hours per week. Therefore, it resulted in Plaintiff not being compensated for all hours that she worked.

67. Further, Defendant was required to furnish a wage statement, which it failed to do throughout Ms. Moneri's employment.

WHEREFORE, Defendants are liable to Plaintiff under Count III for all unpaid wages in such amounts as are proven at trial, plus liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, costs, and any other and further relief this court deems appropriate.

**COUNT FOUR**
**Violation of Maryland Wage Payment and Collection Law**
**Md. Code Ann. Labor and Employment Article §3-501, et seq.**
**Against Defendant Daydream**

68. Plaintiff hereby restates and incorporates Paragraphs 1 through 38 hereof as though fully set forth herein.

69. The provisions regarding pay periods and regular payment of wages set forth in the Maryland Wage Payment and Collection Law, Md. Code Ann. Labor and Employment Article §3-501, et seq., apply to Defendant and protect Plaintiff.

70. Plaintiff was an "employee" and Defendant was Plaintiff's "employer" within the meaning of the MWPCL.

71. Under the MWPCL § 3-502, Defendant, as Plaintiff's employer, was obligated to pay Plaintiff all wages due for work she performed, at least twice a month or every two weeks.

72. Instead, Plaintiff worked from August 17, 2021 through September 26, 2021, well over a month, without receiving any payment of her wages.

73. Plaintiff then received payment for an uncertain amount of her wages on September 27, 2021, September 29, 2021, and October 1, 2021.

74. As of the date of this filing, Plaintiff has yet to receive her purported final paycheck of her owed wages.

75. Defendant is further in breach of MWPCL §3-504, which requires Defendant to provide a statement of the gross wages earned by Plaintiff and all deductions from those gross wages. Plaintiff never received any such statement during her employment with Defendant and, therefore, does not know to what extent she has not been paid her earned wages.

76. Defendant's failure and refusal to pay wages due to Plaintiff as required by the MWPCL was not the result of any *bona fide* dispute between Plaintiff and Daydream.

WHEREFORE, Defendant is liable to Plaintiff under Count IV and Plaintiff has suffered damages for all unpaid wages in such amounts as are proven at trial, plus three (3) times the amount of unpaid wages as additional damages, interest (both pre- and post- judgment), reasonable attorney's fees, costs, and any other and further relief this court deems appropriate.

## COUNT FIVE
### Violation of Maryland Wage Payment and Collection Law – Failure to Furnish Wage Statement
### Md. Code Ann. Labor and Employment Article §3-504
### Against Defendant Daydream

77. Plaintiff hereby restates and incorporates Paragraphs 1 through 38 hereof as though fully set forth herein.

78. The provisions regarding furnishing a statement of Plaintiff's wages set forth in the Maryland Wage Payment and Collection Law, Md. Code Ann. Labor and Employment Article §3-504, apply to Defendant and protect Plaintiff.

79. Plaintiff was an "employee" and Defendant was Plaintiff's "employer" within the meaning of the MWPCL.

80. Under the MWPCL § 3-504, Defendant, as Plaintiff's employer, was obligated to provide Plaintiff with "a statement of the gross earnings of the employee and the deductions from those gross earnings."

81.     Instead, Plaintiff did not receive a wage statement, or information on how to access one, during her tenure with Defendant.

82.     Therefore, Plaintiff does not know to what extent she has not been paid her earned wages.

WHEREFORE, Defendant is liable to Plaintiff under Count V and Plaintiff has suffered damages for all actual damages to be proved at trial, interest (both pre- and post- judgment), reasonable attorney's fees, costs, and any other and further relief this court deems appropriate.

## COUNT SIX
### BREACH OF CONTRACT
### Maryland Common Law
### Against Defendant Daydream

83.     Plaintiff hereby restates and incorporates Paragraphs 1 through 38 hereof as though fully set forth herein.

84.     Plaintiff signed an Employment Contract with Daydream on August 9, 2021 that was to be in effect from August 17, 2021 through August 1, 2022.

85.     In the Employment Contract that Plaintiff executed, it provides that either party may terminate the Employment Contract.

86.     Further, the Employment Contract states that if either party wants to terminate the Contract during the first six (6) months of employment, that party must give at least thirty (30) days notice prior to the termination.

87.     Daydream terminated Plaintiff on October 6, 2021, without noticing, and made the termination effective retroactively to October 4, 2021.

88.     Daydream's termination of Plaintiff was within two months of her being hired.

89.     Therefore, Daydream materially breached its obligations under the Employment Contract by terminating Plaintiff's employment immediately and not providing 30-days notice to

Plaintiff. In fact, Daydream back-dated the termination in its October 6, 2021 correspondence to be effective October 4, 2021.

WHEREFORE, Defendant is liable to Plaintiff under Count VI and Plaintiff has suffered damages for all wages Plaintiff would have earned had Defendant not breached the contract in such amounts as are proven at trial, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this court deems appropriate.

### COUNT SEVEN
### Violation of Health Care Workers Whistleblowers Protection Act
### Md. Code Ann., Health Occupations, §1-501, et seq.
### Against Defendant Daydream

90. Plaintiff hereby restates and incorporates Paragraphs 1 through 38 hereof as though fully set forth herein.

91. The Health Care Workers Whistleblowers Protection Act provides that "an employer may not take or refuse to take any personnel action as reprisal against an employee because the employee discloses… to a supervisor… an activity, policy, or practice of the employer that is in violation of a law, rule or regulation." Md. Code Ann., Health Occupations, §1-502(3).

92. On October 4, 2021, Ms. Moneri submitted a written ethics complaint to Jay Morelock, Ryan Smith, Holly Smith, and Erica Cox that included a complaint regarding Daydream's alteration of a patient's medical records.

93. "A provider may not knowingly or willfully destroy, damage, alter, obliterate, or otherwise obscure a medical record, hospital report, laboratory report, X-ray report, or other information about a patient in an effort to conceal the information from use as evidence in an administrative, civil, or criminal proceeding." Md. Health-General, Code Ann. §4-401(b).

94. Further, Md. Health-General, Code Ann. §4-403 provides that medical records must be maintained for at least five (5) years and may not be destroyed without notice to the patient.

95. On the night of October 4, 2021, Ms. Holly Smith texted Ms. Moneri and instructed her to stay home the following day, Tuesday, October 5, 2021, while management officials discussed her complaints.

96. During October 5, 2021, Ms. Moneri did not receive any communication from Daydream.

97. The next day, October 6, 2021, Ms. Moneri was terminated.

98. Promptly thereafter, on October 6, 2021, Ms. Holly Smith, Human Resources Manager, terminated Plaintiff on behalf of Daydream effective October 4, 2021.

WHEREFORE, Defendant is liable to Plaintiff under Count VII, as Plaintiff has suffered damage for back pay, reinstatement to her position at the same seniority with the same benefits, front pay, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this court deems appropriate.

Respectfully submitted,

/s/ Jamaal W. Stafford, Esq.
Jamaal W. Stafford, Esq.  (Bar No. 29491)
Elizabeth A. Marcus-Wenger, Esq. (Bar No. 30123)
Kwabena Owusu-Koduah, Esq. (Bar No. 21981)
The Law Firm of J.W. Stafford, LLC
20 S. Charles Street, Suite 901
Baltimore, Maryland 21201
410.514.6099
jay@staffordtrialteam.com
elizabeth@staffordtrialteam.com
kwabena@staffordtrialteam.com
*Attorneys for Plaintiff*